UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY L. PHELPS-ROPER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROY LOGSDEN, in his official capacity )<br>   as Chief of Potosi Police Department )<br>)<br>)<br>KEVIN SCHROEDER, in his official )<br>   capacity as Washington )<br>   County Sheriff, )<br>)<br>and, )<br>)<br>JOHN D. RUPP, in his official )<br>   Capacity as Prosecuting Attorney, )<br>   Washington County, )<br>)<br>Defendants. )<br>) | No. _____<br><br>**COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF** |

-------------------------------------------------

## INTRODUCTION

1) Plaintiff is a United States citizen and a member of the Westboro Baptist Church (WBC). As part of her religious duties, Plaintiff desires to engage in a protest in public *fora* on or about December 22, 2007 near a funeral and funeral procession being held in Washington County, Missouri. Mo. Rev. Stat. § 578.501 bars protests "in front of or about" any location where there is a funeral procession, ceremony, or memorial service. Mo. Rev. Stat. § 578.501. Violation of the law is a class B misdemeanor.

2) Plaintiff and other church members do not know how to comply with the law's vague proscription. In an effort to determine how to engage in religious speech without running

1

afoul of the law, plaintiff and her attorneys contacted Defendants to ascertain how "in front of or about" would be interpreted. Would 100 feet away be sufficient? 300 feet? 1,000 feet? Defendants refused to say what "in front of or about" means or how it would be quantified on December 22, 2007.

3) Section 578.501 is unconstitutional because it is vague but also because (a) it is a restriction on speech protected by the First Amendment that further no significant government interest, (b) it is not narrowly tailored toward achievement of a government interest, (c) it does not leave open sufficient alternatives, and (d) it is overbroad on its face.

4) As a result of threatened enforcement of § 578.501 and the lack of clarity about what speech is criminal, plaintiff and other church members must choose between (a) being chilled in the efforts to engage in protected speech activities inspired by their religious beliefs by canceling their demonstration or (b) risk arrest and prosecution without any notice as to what speech activity is, or is not, proscribed by law.

5) Defendants are required by virtue of their offices to enforce § 578.501. Unless defendants are enjoined from enforcing this provision, plaintiff will be irreparably harmed and effectively chilled from expressing her religious beliefs through non-disruptive, non-disorderly picketing and protests that are protected by the First and Fourteenth Amendments.

6) This action seeks entry of a declaratory judgment finding § 578.501 unconstitutional as well as a temporary restraining order and preliminary and permanent injunction prohibiting the enforcement of this criminal statute by Defendants.

## JURISDICTION AND VENUE

7) This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201 and 42 U.S.C. § 1983.

8) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Local Rule 2.07(a)(1).

**PARTIES**

9) Plaintiff is a resident of Topeka, Kansas. She is a member of WBC. The Church follows Primitive Baptist and Calvinist doctrines. Based on these doctrines, church members, including plaintiff, believe that homosexuality is a sin and an abomination. They believe homosexuality is the worst of all sins and indicative of the final reprobation of an individual; it follows, according to their beliefs, that acceptance of homosexuality by society prompts divine judgment. They further believe that God is punishing America for the sin of homosexuality by killing Americans, including soldiers. Because they believe that God is omnipotent to cause or prevent tragedy, when tragedy strikes it is indicative of God's wrath.

10) Plaintiff and other church members have long expressed their religious views by engaging in picketing and protesting. They have protested at churches, theaters, parades, and demonstrations that they view as promoting homosexuality. For many years, they have also picketed and protested near funerals of gay people, persons who died from AIDS, people whose lifestyles they believe to be sinful but are touted as heroic upon their death, and people whose actions while alive had supported homosexuality.

11) The purpose of picketing and protesting near funerals is to use an available public platform to publish plaintiff and other church members' religious message: that God's promise of love and heaven for those who obey him in this life is counterbalanced by God's wrath and hell for those who do not. The funerals of soldiers, in plaintiff's view, have become an internationally watched platform where the question of whether God is cursing or blessing America is being discussed. Plaintiff and her church believe the scriptures teach that an individual who dies on the battlefield for a nation that is at enmity with God cannot go to heaven

3

and, despite the views of public figures, is not a hero. For this reason, it is imperative to plaintiff's faith that the contradictory message from public figures be balanced with scriptural message at the time it is being uttered. Further, plaintiff and other church members believe that funerals, burials, and memorial services are times when the eyes, ears, and hearts of mankind are attending to matters of eternity. Plaintiff and her church believe it is too late for the dead, but not for the living. Also, plaintiff and her church believe one of the great sins of America is idolatry in the form of worshiping the human instead of God, and in America this has taken the form of intense worship of the dead, particularly soldiers. For all these reasons, this public platform is the only place where this religious message can and must be delivered in a timely and relevant manner to those attending the funeral and to those participating in the public events and displays outside the funeral.

12) Defendant Roy Logsden is the Chief of the Potosi Police Department.

13) Defendant Kevin Schroeder is the Washington County Sheriff.

14) Defendant John D. Rupp is the Prosecuting Attorney for Washington County. Rupp is responsible for commencing and prosecuting all criminal actions in Washington County. Mo. Rev. Stat. § 56.060.1 (2006).

15) Defendants were, at all relevant times, acting under color of state law.

16) Defendants are sued in their official capacities.

## STATUTES

17) The current version of Mo. Rev. Stat. § 578.501 took effect on July 6, 2006, upon being signed by the Governor. It provides, *inter alia*,

> It shall be unlawful for any person to engage in picketing or other
> protest activities in front of or about any location at which a
> funeral is held, within one hour prior to the commencement of any

4

funeral, and until one hour following the cessation of any funeral. Each day on which a violation occurs shall constitute a separate offense. Violation of this section is a class B misdemeanor, unless committed by a person who has previously pled guilty to or been found guilty of a violation of this section, in which case the violation is a class A misdemeanor. Mo. Rev. Stat. § 578.501.2 (2006).

The statute defines the term funeral as meaning "the ceremonies, processions[,] and memorial services held in connection with the burial or cremation of the dead." Mo. Rev. Stat. § 578.501.3 (2006). The current § 578.501 is nearly identical to the former § 578.501, which became law upon being signed February 23, 2006, by the acting governor, Senator Michael Gibbons. The current law expanded the reach of the former law, which had banned pickets and protests only "in front of or about any church, cemetery, or funeral establishment."

18) Recognizing § 578.501 is unconstitutional and will inevitably be invalidated, the legislature enacted a contingent back-up provision-- § 578.502-- to become effective "on the date the provisions of section 578.501 are finally declared void or unconstitutional by a court of competent jurisdiction." Section 578.502 is identical to § 578.501 except that instead of barring protests and picketing "in front of or about" locations, it prohibits the same activities within 300 feet of the same locations. This lawsuit does not challenge § 578.502.

## FACTUAL ALLEGATIONS

19) Plaintiff and other church members have picketed and protested near funerals of American soldiers killed in Iraq and Afghanistan. At all times, Plaintiff's protests were pursuant to her firmly and sincerely held religious beliefs.

5

20) On August 5, 2005, plaintiff and other church members held a non-disruptive, non-disorderly picket and protest near the funeral of Spc. Edward Lee Myers in St. Joseph.

21) In direct response to the protest and the content of the speech, Missouri Senate Majority Leader Charlie Shields introduced the law that, when enacted, became § 578.501.

22) Section 578.501 and, upon its being found unconstitutional, § 578.502, are known as "Spc. Edward Lee Myers' Law." Mo. Rev. Stat. § 578.501.1 (2006); § 78.502.1 (2006).

23) According to the Governor, the target of the law was the content of the protestors' message: "It is offensive that groups would attempt to spread a *message of hate* as families and friends grieve the loss of a loved one." Office of Governor Matt Blunt, Press Release, "Blunt Signs Law Shielding Mourners; Ending Funeral Protests," available at http://www.gov.mo.gov/press/HB1026070506.htm (last visited September 13, 2006) (emphasis added). The Governor also confirmed that the law is "in response to an August protest in St. Joseph at the funeral of Spc. Edward Myer." *Id.*

24) Violations of §§ 578.501 and 578.502 are Class B misdemeanors. Subsequent violations after a conviction are Class A misdemeanors. Class A and Class B misdemeanors carry the possibility of incarceration in the county jail, imposition of a fine, or both.

25) Since the enactment of § 578.501, plaintiff and other members of her church have desired to conduct pickets and protests near funerals in several Missouri locations, including Anderson, Carrollton, Eugene, Eureka, Jamestown, Kirksville, Liberty, Republic, St. Joseph, St. Louis, and St. Robert.

26) Because plaintiff supports non-violent and law-abiding protests and does not want herself or other church members to be arrested, she contacted local law enforcement officials to determine how they would interpret § 578.501's vague description "in front of or about any location at which a funeral is held." The Governor, for instance, interprets § 578.501, without

any geographic limitations as "ma[king] it illegal for any person or group to engage in protest within one hour before and one hour following any funeral service." Office of Governor Matt Blunt, Press Release, "Blunt Signs Law Shielding Mourners; Ending Funeral Protests," available at http://www.gov.mo.gov/press/HB1026070506.htm (last visited September 13, 2006)

27) The responses of Missouri's law enforcement officials to Plaintiff's questions about enforcement of the subject statute and to protestors' attempts to comply with the statute have been inconsistent.

28) Plaintiff desires to stage a demonstration on or about December 22, 2007 in Washington County, Missouri. On December 19, 2007, Plaintiff contacted all three Defendants to inquire how the vague phrase "in front of or about" in § 578.501 will be interpreted by law enforcement. Plaintiff plans a non-disruptive, non-disorderly demonstration and wishes to comply with the law. As a consequence of the vague language in § 578.501, plaintiff cannot-- absent guidance from law enforcement-- know where she and her fellow church members can conduct her religious demonstration without facing arrest and prosecution. Defendants have refused to tell Plaintiff or her attorneys how "in front of or about" will be interpreted and where they might stage their demonstration without fear of arrest. Instead, on December 21, 2007, Defendant Rupp insisted that both § 578.501 and § 578.502, which is not yet in effect, would be "vigorously enforced in Washington County and violators prosecuted to the maximum extent possible under the law." He warned that Plaintiff and other church members would §§ 578.501 and 578.502 "at their peril."

29) Prior to Defendant Rupp's letter, Defendant Schroeder reached an agreement with Plaintiff and other church members that they could stage their protest either 300 feet to the south of the church property, standing on the NE corner of "T" intersection of State Hwy 21 and Wallace Road (CR-415), standing on the east side of State Hwy 21, or 300 feet to the north of

7

the church property, standing on the east side of State Hwy 21, on the state right-of-way located at either location. In light of Defendant Rupp's letter it is unclear whether Defendant Schroeder will abide by his agreement.

## COUNT I

*Right to free speech under the First Amendment as to Section 578.501*

30) Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

31) Section 578.501 infringes on the speech of Plaintiffs and other church members that is protected by the First Amendment.

32) There is no significant state interest that outweighs Plaintiff's First Amendment rights.

33) Section 578.501 is not narrowly tailored.

34) Section 578.501 is facially overbroad.

35) Section 578.501 does not leave open amply alternative channels of communication of the information Plaintiff wishes to express.

36) Section 578.501 fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.

38) Section 578.501 authorizes or encourages arbitrary and discriminatory enforcement.

39) The vague language of § 578.501 combined with Defendants refusal to share their understanding of the criminal statute's meaning and at least one Defendant's threat to arrest and prosecute violators of the statute causes Plaintiff and other church members reasonably fear arrest and prosecution if they stage a religious demonstration in Jackson, Missouri.

8

## COUNT II

*Challenge to Section 578.502*

40) Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

41) Section 578.502 is unenforceable by its own terms because Section 578.501 has not yet been finally declared unconstitutional.

42) Section 578.501 infringes on the speech of Plaintiffs and other church members that is protected by the First Amendment.

43) There is no significant state interest that outweighs Plaintiff's First Amendment rights.

44) Section 578.501 is not narrowly tailored.

45) Section 578.501 is facially overbroad.

46) Section 578.501 does not leave open amply alternative channels of communication of the information Plaintiff wishes to express.

WHEREFORE, the plaintiff prays this Court:

- A. Enter declaratory judgment finding Mo. Rev. Stat. § 578.501 unconstitutional;

- B. Issue a temporary restraining order and preliminary and permanent injunctions enjoining enforcement of Mo. Rev. Stat. § 578.501 by Defendants upon proper application;

- C. Issue preliminary and permanent injunction enjoining enforcement of § 578.501;

9

D. Award plaintiff costs, including reasonable attorneys fees, pursuant to 42 U.S.C. §1988; and

E. Allow such other and further relief to which plaintiff may be entitled.

Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION OF EASTERN MISSOURI

*[signature]*

ANTHONY E. ROTHERT, # 518779
American Civil Liberties Union of Eastern Missouri
454 Whittier Street
St. Louis, Missouri 63108
(314) 652-3114
FAX: (314) 652-3112

COUNSEL FOR PLAINTIFF


BENICIA BAKER-LIVORSI[1]
6 Westbury Drive
St. Charles, Missouri 63301
(636) 947-8181

COOPERATING ATTORNEY FOR ACLU/EM
COUNSEL FOR PLAINTIFF

---

[1] Motion for Admission *pro hac vice* to be filed

10

## CERTIFICATE OF SERVICE

A copy of the foregoing was delivered to John D. Rupp as counsel for Defendants by facsimile at (573) 438-7044, at his request. In addition a copy has been send to the Attorney General's office by facsimile and by first class mail. All service occurred on December 21, 2007.

_____